**[J-2A-2025, J-2B-2025, J-2C-2025, J-2D-2025, J-2E-2025, J-2F-2025, J-2G-2025, J-2H-2025, J-2I-2025, J-2J-2025, J-2K-2025, J-2L-2025, J-2M-2025, J-2N-2025 and J-2O-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| MICHAEL TRANTER, AS THE ADMINISTRATOR OF THE ESTATE OF J.V., A MINOR, AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE AND LUCERO VAZQUEZ, INDIVIDUALLY, VEYSEL ERDAL GULERTEKIN, AS THE ADMINISTRATOR OF THE ESTATE OF EILEEN ZELIS ARIA, HOLLY KEHLER, ON BEHALF OF THE BENEFICIARIES OF THE ESTATE OF DENNIS L. KEHLER, ANTHONY ELLIS, QUWANJAY ELLIS, CHENG YING LIAN, INDIVIDUALLY, AND AS PARENT AND NATURAL GUARDIAN OF I.O., A MINOR, JULIA KHAN, JORGE MORETA, MELANIE MORETA, EDILMA DEL ROCIO ESTUPINAN CABRERA, DENNIS ANANE, HOULEYE CAMARA, AS PARENT AND NATURAL GUARDIAN OF M.F., A MINOR, AMINATA FOFANA, FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.D., A MINOR FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.A.D., A MINOR AND FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF C.D., A MINOR | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 18 EAP 2024 <br><br> Appeal from the Superior Court Order dated October 11, 2023 at Nos. 1746, 2343, 2421, 2426, and 2427 EDA 2022 Vacating the Philadelphia County Court of Common Pleas Order dated June 3, 2022 at Nos. 211001768, 211201805, 211200570, and 211201583. <br><br> ARGUED: March 4, 2025 |
| v. | : : : : | |
| Z&D TOUR, INC., OHIO COACH, INC. D/B/A OHIOCOACH.COM, FEDERAL EXPRESS CORPORATION, AND SIOUX TRUCKING, INC. | : : : : : : : : | |

| | | |
|---|---|---|
| APPEAL OF: FEDERAL EXPRESS CORPORATION, SIOUX TRUCKING, INC., AND BRANDON STOWERS | : | |
| | : | |
| TAYLOR TEETS | : | No. 19 EAP 2024 |
| | : | |
| | : | Appeal from the Superior Court |
| v. | : | Order dated October 11, 2023 at |
| | : | Nos. 1746, 2343, 2421, 2426, and |
| | : | 2427 EDA 2022 Vacating the |
| UNITED PARCEL SERVICE, INC. C/O | : | Philadelphia County Court of |
| CORPORATION SERVICE COMPANY, | : | Common Pleas Order dated June 3, |
| UNITED PARCEL SERVICE, INC., | : | 2022 at Nos. 211001768, |
| PENSKE TRUCK LEASING COMPANY, | : | 211201805, 211200570, and |
| L.P., PENSKE TRUCK LEASING | : | 211201583. |
| CORPORATION, PENSKE AUTOMOTIVE | : | |
| GROUP, PENSKE CORPORATION, Z&D | : | ARGUED:  March 4, 2025 |
| TOURS, INC., JAGUAR TICKET, INC. | : | |
| D/B/A OHIOCOACH.COM, FEDERAL | : | |
| EXPRESS CORPORATION, FEDEX | : | |
| CORPORATION, RYDER TRUCK RENTAL, | : | |
| INC., RYDER SYSTEM, INC., SIOUX | : | |
| TRUCKING, INC., BRANDON STOWERS | : | |
| | : | |
| | : | |
| APPEAL OF: FEDERAL EXPRESS | : | |
| CORPORATION, SIOUX TRUCKING, INC., | : | |
| AND BRANDON STOWERS | : | |
| | : | |
| LUCERO VAZQUEZ, AMAD HUSSAIN, | : | No. 20 EAP 2024 |
| JULIA KHAN, AS PARENT AND NATURAL | : | |
| GUARDIAN OF A.A., A MINOR, TAURELL | : | Appeal from the Superior Court |
| FAVORS, AND ALEXIS HUMBLE | : | Order dated October 11, 2023 at |
| | : | Nos. 1746, 2343, 2421, 2426, and |
| | : | 2427 EDA 2022 Vacating the |
| v. | : | Philadelphia County Court of |
| | : | Common Pleas Order dated June 3, |
| | : | 2022 at Nos. 211001768, |
| Z&D TOUR, INC., OHIO COACH, INC. | : | 211201805, 211200570, and |
| D/B/A OHIOCOACH.COM, FEDERAL | : | 211201583. |
| EXPRESS CORPORATION, AND SIOUX | : | |
| TRUCKING, INC. | : | ARGUED:  March 4, 2025 |
| | : | |
| | : | |
| | : | |
| | : | |

APPEAL OF: FEDERAL EXPRESS
CORPORATION, SIOUX TRUCKING, INC.,
AND BRANDON STOWERS

XUE-ZHEN CHEN, WEI-HUI HUANG, GUI-          : No. 21 EAP 2024
YING REN, ZHEN FENG, ZI WEI LI, SUKIE       :
ZHENG AND SHENYUE CAO                        :
                                            : Appeal from the Superior Court
                                            : Order dated October 11, 2023 at
                                            : Nos. 1746, 2343, 2421, 2426, and
            v.                              : 2427 EDA 2022 Vacating the
                                            : Philadelphia County Court of
                                            : Common Pleas Order dated June 3,
FEDERAL EXPRESS CORPORATION,                 : 2022 at Nos. 211001768,
FEDEX CORPORATION, RYDER TRUCK               : 211201805, 211200570, and
RENTAL, INC., RYDER SYSTEM, INC.,            : 211201583.
SIOUX TRUCKING, INC., BRANDON                :
STOWERS, UNITED PARCEL SERVICE,              : ARGUED:  March 4, 2025
INC., UNITED PARCEL SERVICE, INC.,           :
PENSKE TRUCK LEASING COMPANY,                :
L.P., PENSKE TRUCK LEASING                   :
CORPORATION, PENSKE AUTOMOTIVE               :
GROUP, PENSKE CORPORATION, Z&D               :
TOUR, INC., JAGUAR TICKET, INC.              :
                                            :
                                            :
APPEAL OF: FEDERAL EXPRESS                   :
CORPORATION, SIOUX TRUCKING, INC.,           :
AND BRANDON STOWERS                          :

XUE-ZHEN CHEN, WEI-HUI HUANG, GUI-          : No. 22 EAP 2024
YING REN, ZHEN FENG, ZI WEI LI, SUKIE       :
ZHENG AND SHENYUE CAO                        :
                                            : Appeal from the Superior Court
                                            : Order dated October 11, 2023 at
                                            : Nos. 1746, 2343, 2421, 2426, and
            v.                              : 2427 EDA 2022 Vacating the
                                            : Philadelphia County Court of
                                            : Common Pleas Order dated June 3,
FEDERAL EXPRESS CORPORATION,                 : 2022 at Nos. 211001768,
FEDEX CORPORATION, RYDER TRUCK               : 211201805, 211200570, and
RENTAL, INC., RYDER SYSTEM, INC.,            : 211201583.
SIOUX TRUCKING, INC., BRANDON                :
STOWERS, UNITED PARCEL SERVICE,              : ARGUED:  March 4, 2025
INC., UNITED PARCEL SERVICE, INC.,           :
PENSKE TRUCK LEASING COMPANY,                :
L.P., PENSKE TRUCK LEASING                   :

CORPORATION, PENSKE AUTOMOTIVE : 
GROUP, PENSKE CORPORATION, Z&D :
TOUR, INC., JAGUAR TICKET, INC. :
 :
 :
 :
APPEAL OF: FEDERAL EXPRESS :
CORPORATION, SIOUX TRUCKING, INC., :
AND BRANDON STOWERS :

XUE-ZHEN CHEN, WEI-HUI HUANG, GUI- : No. 23 EAP 2024
YING REN, ZHEN FENG, ZI WEI LI, SUKIE :
ZHENG AND SHENYUE CAO : Appeal from the Superior Court
 : Order dated October 11, 2023 at
 : Nos. 1746, 2343, 2421, 2426, and
 v. : 2427 EDA 2022 Vacating the
 : Philadelphia County Court of
 : Common Pleas Order dated June 3,
FEDERAL EXPRESS CORPORATION, : 2022 at Nos. 211001768,
FEDEX CORPORATION, RYDER TRUCK : 211201805, 211200570, and
RENTAL, INC., RYDER SYSTEM, INC., : 211201583.
SIOUX TRUCKING, INC., BRANDON :
STOWERS, UNITED PARCEL SERVICE, : ARGUED: March 4, 2025
INC., UNITED PARCEL SERVICE, INC., :
PENSKE TRUCK LEASING COMPANY, :
L.P., PENSKE TRUCK LEASING :
CORPORATION, PENSKE AUTOMOTIVE :
GROUP, PENSKE CORPORATION, Z&D :
TOUR, INC., JAGUAR TICKET, INC. :
 :
 :
 :
APPEAL OF: PENSKE TRUCK LEASING :
COMPANY, L.P., PENSKE TRUCK :
LEASING CORPORATION, PENSKE :
AUTOMOTIVE GROUP, AND PENSKE :
CORPORATION :

MICHAEL TRANTER, AS THE : No. 24 EAP 2024
ADMINISTRATOR OF THE ESTATE OF :
J.V., A MINOR, AND ADMINISTRATOR AD : Appeal from the Superior Court
PROSEQUENDUM OF THE ESTATE AND : Order dated October 11, 2023 at
LUCERO VAZQUEZ, INDIVIDUALLY, : Nos. 1746, 2343, 2421, 2426, and
VEYSEL ERDAL GULERTEKIN, AS THE : 2427 EDA 2022 Vacating the
ADMINISTRATOR OF THE ESTATE OF : Philadelphia County Court of
EILEEN ZELIS ARIA, HOLLY KEHLER, ON : Common Pleas Order dated June 3,
BEHALF OF THE BENEFICIARIES OF THE : 2022 at Nos. 211001768,

| | |
|---|---|
| ESTATE OF DENNIS L. KEHLER, ANTHONY ELLIS, QUWANJAY ELLIS, CHENG YING LIAN, INDIVIDUALLY, AND AS PARENT AND NATURAL GUARDIAN OF I.O., A MINOR, JULIA KHAN, JORGE MORETA, MELANIE MORETA, EDILMA DEL ROCIO ESTUPINAN CABRERA, DENNIS ANANE, HOULEYE CAMARA, AS PARENT AND NATURAL GUARDIAN OF M.F., A MINOR, AMINATA FOFANA, FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.D., A MINOR FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.A.D., A MINOR AND FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF C.D., A MINOR | : 211201805, 211200570, and<br>: 211201583.<br>:<br>: ARGUED: March 4, 2025<br>: |
| v. | : |
| Z&D TOUR, INC., OHIO COACH, INC. D/B/A OHIOCOACH.COM, FEDERAL EXPRESS CORPORATION, AND SIOUX TRUCKING, INC. | : |
| APPEAL OF: PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, AND PENSKE CORPORATION | : |
| TAYLOR TEETS | : No. 25 EAP 2024<br>: |
| v. | : Appeal from the Superior Court<br>: Order dated October 11, 2023 at<br>: Nos. 1746, 2343, 2421, 2426, and<br>: 2427 EDA 2022 Vacating the<br>: Philadelphia County Court of |
| UNITED PARCEL SERVICE, INC. C/O CORPORATION SERVICE COMPANY, UNITED PARCEL SERVICE, INC., PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING | : Common Pleas Order dated June 3,<br>: 2022 at Nos. 211001768,<br>: 211201805, 211200570, and<br>: 211201583. |

[J-2A-2025, J-2B-2025, J-2C-2025, J-2D-2025, J-2E-2025, J-2F-2025, J-2G-2025, J-2H-2025, J-2I-2025, J-2J-2025, J-2K-2025, J-2L-2025, J-2M-2025, J-2N-2025 and J-2O-2025] - 5

CORPORATION, PENSKE AUTOMOTIVE GROUP, PENSKE CORPORATION, Z&D TOURS, INC., JAGUAR TICKET, INC. D/B/A OHIOCOACH.COM, FEDERAL EXPRESS CORPORATION, FEDEX CORPORATION, RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., SIOUX TRUCKING, INC., BRANDON STOWERS

ARGUED: March 4, 2025

APPEAL OF: PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, AND PENSKE CORPORATION

LUCERO VAZQUEZ, AMAD HUSSAIN, JULIA KHAN, AS PARENT AND NATURAL GUARDIAN OF A.A., A MINOR, TAURELL FAVORS, AND ALEXIS HUMBLE

v.

Z&D TOUR, INC., OHIO COACH, INC. D/B/A OHIOCOACH.COM, FEDERAL EXPRESS CORPORATION, AND SIOUX TRUCKING, INC.

No. 26 EAP 2024

Appeal from the Superior Court Order dated October 11, 2023 at Nos. 1746, 2343, 2421, 2426, and 2427 EDA 2022 Vacating the Philadelphia County Court of Common Pleas Order dated June 3, 2022 at Nos. 211001768, 211201805, 211200570, and 211201583.

ARGUED: March 4, 2025

APPEAL OF: PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, AND PENSKE CORPORATION

XUE-ZHEN CHEN, WEI-HUI HUANG, GUI-YING REN, ZHEN FENG, ZI WEI LI, SUKIE ZHENG AND SHENYUE CAO

v.

No. 27 EAP 2024

Appeal from the Superior Court Order dated October 11, 2023 at Nos. 1746, 2343, 2421, 2426, and 2427 EDA 2022 Vacating the Philadelphia County Court of Common Pleas Order dated June 3,

| | | |
|---|---|---|
| FEDERAL EXPRESS CORPORATION, FEDEX CORPORATION, RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., SIOUX TRUCKING, INC., BRANDON STOWERS, UNITED PARCEL SERVICE, INC., UNITED PARCEL SERVICE, INC., PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, PENSKE CORPORATION, Z&D TOUR, INC., JAGUAR TICKET, INC. APPEAL OF: PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, AND PENSKE CORPORATION | : : : : : : : : : : : : : : : : : : : : : | 2022 at Nos. 211001768, 211201805, 211200570, and 211201583.<br><br>ARGUED: March 4, 2025 |
| MICHAEL TRANTER, AS THE ADMINISTRATOR OF THE ESTATE OF J.V., A MINOR, AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE AND LUCERO VAZQUEZ, INDIVIDUALLY, VEYSEL ERDAL GULERTEKIN, AS THE ADMINISTRATOR OF THE ESTATE OF EILEEN ZELIS ARIA, HOLLY KEHLER, ON BEHALF OF THE BENEFICIARIES OF THE ESTATE OF DENNIS L. KEHLER, ANTHONY ELLIS, QUWANJAY ELLIS, CHENG YING LIAN, INDIVIDUALLY, AND AS PARENT AND NATURAL GUARDIAN OF I.O., A MINOR, JULIA KHAN, JORGE MORETA, MELANIE MORETA, EDILMA DEL ROCIO ESTUPINAN CABRERA, DENNIS ANANE, HOULEYE CAMARA, AS PARENT AND NATURAL GUARDIAN OF M.F., A MINOR, AMINATA FOFANA, FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.D., A MINOR FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF A.A.D., A MINOR AND FATOUMATA TRAORE, AS PARENT AND NATURAL GUARDIAN OF C.D., A MINOR | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 28 EAP 2024<br><br>Appeal from the Superior Court Order dated October 11, 2023 at Nos. 1746, 2343, 2421, 2426, and 2427 EDA 2022 Vacating the Philadelphia County Court of Common Pleas Order dated June 3, 2022 at Nos. 211001768, 211201805, 211200570, and 211201583.<br><br>ARGUED: March 4, 2025 |

<table>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Z&D TOUR, INC., OHIO COACH, INC.<br>D/B/A OHIOCOACH.COM, FEDERAL<br>EXPRESS CORPORATION, AND SIOUX<br>TRUCKING, INC.</td><td>:</td><td></td></tr>
<tr><td>APPEAL OF: UNITED PARCEL SERVICE,<br>INC.</td><td>:</td><td></td></tr>
</table>

|  |  |  |
|---|---|---|
| TAYLOR TEETS | : | No. 29 EAP 2024 |
|  | : |  |
|  | : | Appeal from the Superior Court |
| v. | : | Order dated October 11, 2023 at |
|  | : | Nos. 17461746, 2343, 2421, 2426, |
|  | : | and 2427 EDA 2022 Vacating the |
| UNITED PARCEL SERVICE, INC. C/O | : | Philadelphia County Court of |
| CORPORATION SERVICE COMPANY, | : | Common Pleas Order dated June 3, |
| UNITED PARCEL SERVICE, INC., | : | 2022 at Nos. 211001768, |
| PENSKE TRUCK LEASING COMPANY, | : | 211201805, 211200570, and |
| L.P., PENSKE TRUCK LEASING | : | 211201583. |
| CORPORATION, PENSKE AUTOMOTIVE | : |  |
| GROUP, PENSKE CORPORATION, Z&D | : | ARGUED:  March 4, 2025 |
| TOURS, INC., JAGUAR TICKET, INC. | : |  |
| D/B/A OHIOCOACH.COM, FEDERAL | : |  |
| EXPRESS CORPORATION, FEDEX | : |  |
| CORPORATION, RYDER TRUCK RENTAL, | : |  |
| INC., RYDER SYSTEM, INC., SIOUX | : |  |
| TRUCKING, INC., BRANDON STOWERS | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: UNITED PARCEL SERVICE, | : |  |
| INC. | : |  |

|  |  |  |
|---|---|---|
| LUCERO VAZQUEZ, AMAD HUSSAIN, | : | No. 30 EAP 2024 |
| JULIA KHAN, AS PARENT AND NATURAL | : |  |
| GUARDIAN OF A.A., A MINOR, TAURELL | : | Appeal from the Superior Court |
| FAVORS, AND ALEXIS HUMBLE | : | Order dated October 11, 2023 at |
|  | : | Nos. 1746, 2343, 2421, 2426, and |
|  | : | 2427 EDA 2022 Vacating the |
| v. | : | Philadelphia County Court of |
|  | : | Common Pleas Order dated June 3, |
|  | : | 2022 at Nos. 211001768, |

| | |
|---|---|
| Z&D TOUR, INC., OHIO COACH, INC. D/B/A OHIOCOACH.COM, FEDERAL EXPRESS CORPORATION, AND SIOUX TRUCKING, INC. | : 211201805, 211200570, and<br>: 211201583.<br>:<br>: ARGUED:  March 4, 2025<br>:<br>:<br>: |
| APPEAL OF: UNITED PARCEL SERVICE, INC. | :<br>: |
| XUE-ZHEN CHEN, WEI-HUI HUANG, GUI-YING REN, ZHEN FENG, ZI WEI LI, SUKIE ZHENG AND SHENYUE CAO | : No. 31 EAP 2024<br>:<br>: Appeal from the Superior Court<br>: Order dated October 11, 2023 at<br>: Nos. 1746, 2343, 2421, 2426, and |
| v. | : 2427 EDA 2022 Vacating the<br>: Philadelphia County Court of<br>: Common Pleas Order dated June 3, |
| FEDERAL EXPRESS CORPORATION, FEDEX CORPORATION, RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., SIOUX TRUCKING, INC., BRANDON STOWERS, UNITED PARCEL SERVICE, INC., UNITED PARCEL SERVICE, INC., PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, PENSKE CORPORATION, Z&D TOUR, INC., JAGUAR TICKET, INC. | : 2022 at Nos. 211001768,<br>: 211201805, 211200570, and<br>: 211201583.<br>:<br>: ARGUED:  March 4, 2025<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| APPEAL OF: UNITED PARCEL SERVICE, INC. | :<br>: |
| XUE-ZHEN CHEN, WEI-HUI HUANG, GUI-YING REN, ZHEN FENG, ZI WEI LI, SUKIE ZHENG AND SHENYUE CAO | : No. 32 EAP 2024<br>:<br>: Appeal from the Superior Court<br>: Order dated October 11, 2023 at<br>: Nos. 1746, 2343, 2421, 2426, and |
| v. | : 2427 EDA 2022 Vacating the<br>: Philadelphia County Court of<br>: Common Pleas Order dated June 3, |
| FEDERAL EXPRESS CORPORATION, FEDEX CORPORATION, RYDER TRUCK RENTAL, INC., RYDER SYSTEM, INC., SIOUX TRUCKING, INC., BRANDON | : 2022 at Nos. 211001768,<br>: 211201805, 211200570, and<br>: 211201583. |

| | | |
|---|---|---|
| STOWERS, UNITED PARCEL SERVICE, INC., UNITED PARCEL SERVICE, INC., PENSKE TRUCK LEASING COMPANY, L.P., PENSKE TRUCK LEASING CORPORATION, PENSKE AUTOMOTIVE GROUP, PENSKE CORPORATION, Z&D TOUR, INC., JAGUAR TICKET, INC. | : : : : : : : : : : | ARGUED: March 4, 2025 |
| APPEAL OF: UNITED PARCEL SERVICE, INC. | : : | |

## OPINION

JUSTICE WECHT                                  **DECIDED: September 25, 2025**

These consolidated appeals concern the doctrine of *forum non conveniens*. This legal principle and its associated procedural rule authorize intrastate transfer of a civil litigation from the venue in which the plaintiff chooses to file suit to one more appropriate under the circumstances.[1] The instant cases arose from a multi-vehicle collision that occurred in Westmoreland County, in western Pennsylvania. The plaintiffs elected to bring suit across the state in Philadelphia County, on Pennsylvania's eastern border. A judge of the Court of Common Pleas of Philadelphia County granted defense petitions to transfer the litigation to Westmoreland County on *forum non conveniens* grounds,

---

[1] *See* Pa.R.Civ.P. 1006(d)(1) ("For the convenience of parties and witnesses, the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought."). Transfer between counties within Pennsylvania under Rule 1006(d)(1) is distinct from the stay or dismissal of litigation that "should be heard in another forum," such as a different state. 42 Pa.C.S. § 5322(e). For a thorough discussion of the distinctions between the interstate and intrastate contexts in which *forum non conveniens* issues arise, and the differences in the available remedies, *see Alford v. Philadelphia Coca-Cola Bottling Co., Inc.*, 531 A.2d 792, 793-94 (Pa. Super. 1987). The instant appeals solely concern the question of intrastate transfer, and the parties have not invoked 42 Pa.C.S. § 5322(e) or associated case law.

highlighting the number of potential witnesses who would be forced to travel a great distance. The Superior Court reversed, concluding that the defendants failed to provide sufficient detail establishing that the identified individuals were "key witnesses" who would provide "relevant and necessary" testimony that would be "critical to their defenses."[2] Because the intermediate court's "key witness" requirement finds no support in this Court's precedent and imposes an excessively high burden upon the defense, we reverse the Superior Court's order. The trial court's transfer to Westmoreland County was wholly proper.

## I. Background

This litigation arose from a catastrophic multi-vehicle collision that occurred at approximately 3:30 a.m. on January 5, 2020. A motorcoach bus owned by Z&D Tour, Inc., was en route from New York City to Cincinnati, Ohio, with 59 passengers on board, in addition to its driver. The driver failed to navigate a curve on a section of I-70/I-76 near Mount Pleasant in Westmoreland County. The bus rolled over onto its side, blocking the westbound lanes of travel. A FedEx tractor-trailer then crashed into the bus, followed seconds later by a UPS tractor-trailer.[3] A car swerved off the highway to avoid the wreck, but it was struck nonetheless by another UPS truck that also swerved off the road to avoid the pile-up. Five people died in the crash—the bus driver, two bus passengers, and two

---

[2] *Tranter v. Z&D Tour, Inc.*, 303 A.3d 1070, 1075-78 (Pa. Super. 2023).

[3] "FedEx" refers to the Federal Express Corporation. Although the party initially named in this litigation was FedEx Ground Package System, Inc., on August 23, 2024, we granted FedEx's application to substitute "Federal Express Corporation" as the named party, due to a corporate merger. "UPS" refers to United Parcel Service, Inc. FedEx leased the tractor-trailer involved in this litigation from Sioux Trucking, Inc. ("Sioux Trucking"). UPS leased both tractor-trailers involved in the crash from the Penske Truck Leasing Corporation, though numerous Penske entities were named as defendants (collectively, "Penske").

UPS drivers.  Many others were injured, including nearly all of the bus passengers.  Some were severely injured.

Given the scale of the crash and the number of injured persons, the incident triggered an enormous emergency response.  Scores of police officers, paramedics, EMTs, firefighters, and other first responders from around the area were needed to render aid, to secure and investigate the scene, and to transport numerous injured persons to regional hospitals for emergency medical treatment.[4]  Extensive investigations into the cause of the crash soon followed, not only on the part of law enforcement agencies and insurance companies, but also by the NTSB.

---

[4]   According to the report of the National Transportation Safety Board ("NTSB"):

Five volunteer fire departments in Westmoreland County responded to the crash.  The chief of the Mt. Pleasant Township Fire Department assumed incident command at 3:36 a.m. (a state police officer took over command at 5:27 a.m.).  Mt. Pleasant Township sent four fire and rescue units and 20 firefighters to the scene.  Fire departments from the communities of Youngwood, Norvelt, Kecksburg, and Chestnut Ridge (Stahlstown) sent a total of seven fire and rescue units.  One rescue unit from Fayette County responded as well.

At 3:36 a.m., Mutual Aid Ambulance Service in Greensburg, which held the contract for ground and air ambulances where the crash occurred, received a call from the Westmoreland 911 center and began dispatching crews. According to the Turnpike Commission's log, the first ambulance arrived on scene at 3:49 a.m.  Ambulances were also provided by 10 EMS agencies in surrounding towns and counties.  Altogether, 20 ambulances were sent to the scene.  Local hospitals sent doctors to the scene.  The first ambulance left the scene at 4:05 a.m., and victims began arriving at area hospitals about 4:50 a.m. (the same time the last ambulance left the scene).

NATIONAL TRANSPORTATION SAFETY BOARD, HIGHWAY INVESTIGATION REPORT: MULTIVEHICLE CRASH NEAR MT. PLEASANT TOWNSHIP, PENNSYLVANIA, JANUARY 5, 2020, at 6-7 (Feb. 8, 2022),  https://www.ntsb.gov/investigations/AccidentReports/Reports/HIR2201.pdf  (last visited June 13, 2025).

Four sets of plaintiffs (named in the caption above) filed civil complaints in the Philadelphia County Court of Common Pleas against various defendants, including FedEx, FedEx driver Brandon Stowers, Sioux Trucking, UPS, and Penske. The plaintiffs reside in various places around the country and abroad. All of the corporate defendants conduct business nationwide. In response to preliminary objections in which FedEx and Sioux Trucking sought, *inter alia*, transfer and consolidation with a similar case pending in Allegheny County, the trial court entered an order directing the parties to conduct discovery limited to the issues of venue and *forum non conveniens*.[5] Accordingly, the parties obtained statements from a large number of first responders and other potential fact witnesses, ultimately producing affidavits and conducting depositions of various witnesses. These individuals detailed the personal and professional hardships that they would face if required to travel to Philadelphia, as opposed to participating in litigation in Westmoreland County, which is much closer to their homes and jobs.

Following the limited discovery proceedings, the defendants each filed and/or joined in petitions to transfer venue pursuant to Pa.R.Civ.P. 1006(d)(1), based upon *forum non conveniens*. The trial court granted the petitions and transferred all four cases to Westmoreland County. The court acknowledged that a party seeking transfer under *forum non conveniens* bears a heavy burden to demonstrate that the plaintiff's chosen venue is, in the parlance of the doctrine, "oppressive" or "vexatious."[6] The court further

---

[5]     There was ultimately no dispute that the plaintiffs' initial venue selection was permissible under the Pennsylvania Rules of Civil Procedure.

[6]     *Tranter v. Z&D Tour, Inc.*, Case No. 211001768, at 2 (C.C.P. Philadelphia Oct. 4, 2022) ("Trial Ct. Op.") (citing *Cheeseman v. Lethal Exterminator, Inc.*, 701 A.2d 156, 162 (Pa. 1997)). Although herein we cite the trial court's opinion in the *Tranter* litigation, in each of the relevant cases, the court filed a substantively identical opinion in support of its order.

noted that it must look to the "totality of the circumstances," and that relevant considerations include hardships imposed upon witnesses attributable to "distance, burden of travel, time away from family or work, [and] disruption to business operations," as well as the "difficulty in obtaining witnesses" and "access to proof."[7]

The trial court emphasized that, in this case, "much of the critical trial testimony regarding the accident comes from third-party witnesses (such as state troopers, medical and emergency responders, and eyewitnesses) who reside in or near Westmoreland County."[8] Significant in the trial court's view was the fact that the defense had identified sixty-six potential witnesses who observed the incident or responded to the accident scene. The defendants additionally had produced affidavits from eleven potential witnesses, who testified that travel from Westmoreland County to Philadelphia to participate in the litigation "would represent a significant financial burden (as they would have to pay for the costs associated with travel and lodging), and present significant disruptions to their personal and professional lives."[9] The court stressed that previous judicial decisions have held venues to be oppressive where witnesses would be forced to travel approximately one hundred miles for trial, while here the majority of witnesses would be required to travel well over double that distance.[10]

The trial court noted the plaintiffs' counterargument that two potential witnesses lived closer to Philadelphia than to Westmoreland County. The trial court concluded that the location of these two individuals was outweighed by the fact that the "vast majority of

---

[7]     *Id.* (citing *Lee v. Thrower*, 102 A.2d 1018, 1022-23 (Pa. Super. 2014)).

[8]     *Id.*

[9]     *Id.*

[10]    *Id.* at 2-3 (citing *Powers v. Verizon Pa., LLC*, 230 A.3d 492, 499 (Pa. Super. 2020)).

witnesses in this matter reside well over two-hundred (200) miles from Philadelphia County."[11]  Although the plaintiffs had asserted that travel to Philadelphia would be more convenient for them, the trial court found that the weightier consideration was the greater burden placed upon the defendants and their significantly larger number of anticipated witnesses.

Finally, and most significant for purposes of the issue before this Court, the trial court rejected the plaintiffs' assertion that the identified witnesses were "nonmaterial" and lacking in "personal knowledge of the facts and circumstances."[12]  Citing Superior Court precedent (which is presently challenged), the trial court noted that the petitioner merely must "clearly specify the key witnesses to be called and must make a general statement [of] what their testimony will cover."[13]  The trial court found this burden satisfied.  Many of the identified witnesses were "police, investigators, medical providers, and first responders," and the trial court reasoned that such individuals could provide important testimony on matters such as "(1) weather conditions; (2) road conditions; (3) vehicle conditions; (4) vehicle positions; (5) bus passenger positions; (6) bus passenger conditions; (7) the condition of the operator and codrivers of the tractor-trailers; (8) statements made at the scene; and (9) any investigations, including accident reconstructions."[14]  The trial court highlighted as exemplary the anticipated testimony of a responding paramedic who stated that he had knowledge of the positions of the vehicles at the accident scene, as well as the conditions of injured persons.  Similarly, the Deputy

---

[11]     *Id.* at 3.

[12]     *Id.*

[13]     *Id.* at 4 (quoting *Petty v. Suburban Gen. Hosp.*, 525 A.2d 1230, 1234 (Pa. Super. 1987)).

[14]     *Id.* (numbering corrected).

Coroner of Westmoreland County had indicated that he could testify to the manner in which certain injuries occurred, which would be important to determining liability. These potential witnesses, in the trial court's view, could provide material testimony, and they, like numerous others, also had "stated for the record that Philadelphia represents an oppressive and vexatious venue."[15] Thus, the trial court reasoned, it was appropriate to transfer the litigation to Westmoreland County pursuant to the doctrine of *forum non conveniens.*

The Superior Court reversed the trial court's order. The intermediate court noted that its task on appeal was to review the trial court's decision for an abuse of discretion, and that the trial court's decision to transfer an action for *forum non conveniens* must be supported by a showing on the record that the plaintiff's chosen venue is "oppressive" or "vexatious."[16] The Superior Court also related the defendants' position that Philadelphia is an "oppressive" venue due to the hardship imposed upon witnesses, and that there was no suggestion that the plaintiffs' selection here was "designed to harass" the defendants, so as to render it "vexatious."[17]

The Superior Court then turned to its own precedent concerning the nature of the petitioner's burden. Invoking its 1987 decision in *Petty v. Suburban General Hospital*, the Superior Court stated that a claim of witness hardship requires "a general statement of what testimony that witness will provide," and that this statement "must establish that the

---

[15]    *Id.* at 5.

[16]    *Tranter*, 303 A.3d at 1074-75, 1075 n.6 (citing *Walls v. Phoenix Ins. Co.*, 979 A.2d 847, 850 n.3 (Pa. Super. 2009); *Wood v. E.I. du Pont de Nemours & Co.*, 829 A.2d 707, 711-12 (Pa. Super. 2003) (*en banc*)).

[17]    *Id.* at 1075 n.6 (citing *Wood*, 829 A.2d at 712).

potential witness is 'key' to the defense."[18]  This "key witness" criterion derived from *Petty*,

the Superior Court explained, requires the petitioning defendant to "establish that the

witness possesses testimony that is relevant and necessary to the defense."[19]  The

Superior Court suggested that a trial court may not even consider any alleged hardships

until the defendant has satisfied the "key witness" requirement with "detailed information

on the record," and that the "weight that the trial court places on the hardship should be

in direct proportion to the degree of relevance or necessity of that witness'[s] testimony

to the defense."[20]  The Superior Court elsewhere characterized the defendant's burden

as requiring a showing that the testimony of the identified witness will be "critical" to the

defense—a description that might be understood to exceed even the *Petty*/*Ehmer*

threshold of "relevant and necessary."[21]

The Superior Court was unsatisfied with the defendants' efforts in these cases.

The court acknowledged that the trial court had "summarily concluded" that the

defendants had met its "key witness" requirement through their eleven witness affidavits

and supporting briefing.[22]  Nonetheless, the Superior Court faulted the defendants for

failing to assert in their petitions that the "witnesses who signed the affidavits were 'key

witnesses' for the defense."[23]  Although the Superior Court criticized the content of the

defendants' petitions and briefing, it went on to suggest that the witness affidavits

---

[18]     *Id.* at 1075 (citing *Ehmer v. Maxim Crane Works, L.P.*, 296 A.3d 1202, 1207 (Pa Super. 2023); *Petty*, 525 A.2d at 1234).

[19]     *Id.* (quoting *Ehmer*, 296 A.3d at 1207-08).

[20]     *Id.* (quoting *Ehmer*, 296 A.3d at 1208, 1208 n.6) (brackets in original).

[21]     *Id.* at 1076.

[22]     *Id.* at 1074.

[23]     *Id.* at 1076.

themselves must establish the purported necessity of the testimony to the defense. "Contrary to the trial court's conclusion," the Superior Court opined, "the eleven affidavits and thirty-two unnotarized statements submitted in support" of the petitions failed to "indicate how the individuals are 'key witnesses' for the defense."[24]  The Superior Court dismissed the content of the affidavits—which were from various first responders, the Westmoreland County Deputy Coroner, a FedEx corporate employee, and an insurance claims investigator—because they "describe in nearly identical terms the hardships that traveling to Philadelphia to testify would present to the individual, or to unnamed individuals in their employ."[25]  "None of the affidavits," the Superior Court concluded, "contain information indicating how these potential witnesses' testimonies would be relevant or necessary" to the defense.[26]

Where the trial court had discussed the statements of two witnesses whose anticipated testimony it found particularly likely to be relevant, the Superior Court's treatment of their affidavits gave some insight into the content that the intermediate court expects from a satisfactory "key witness" showing.  The Superior Court suggested that the *witness* must explain how his or her testimony will "benefit" the defense.  "With respect to the two individuals cited by the trial court in support of its decision to transfer," the Superior Court declared, these witnesses "did not indicate in their affidavits or during their depositions how their testimony would benefit the defense."[27]  Specifically, "Joshua Zappone, the Westmoreland County Deputy Coroner, testified that he arrived at the scene

---

[24]    *Id.* at 1077.

[25]    *Id.* (typographical error corrected).

[26]    *Id.*

[27]    *Id.*

hours after the crash to assess the fatalities, but he did not indicate how his assessment would benefit the defense."[28]

The Superior Court thus reversed the trial court's decision, based exclusively upon the "key witness" requirement that it derived from its own precedents in *Petty* and *Ehmer*. The Superior Court, moreover, interpreted this purported burden as one for which the defendant's briefing and argument is not satisfactory, and which must be met substantively within a witness affidavit itself, and pursuant to the witness' own impression of the "benefit" that his or her testimony will provide to the defense's legal strategy. Thus, notwithstanding the defendants' production of eleven witness affidavits and thirty-two witness statements detailing the hardships of traveling from Westmoreland County to Philadelphia to participate in this litigation, the Superior Court declared that, "without any indication that these individuals are 'key witnesses' to the defense," the defendants had "failed to meet their burden to overcome the plaintiffs' choice of forum."[29]

Defendants FedEx,[30] Penske, and UPS each separately petitioned this Court for review of the Superior Court's decision. We granted *allocatur* in order to address the Superior Court's treatment of the doctrine of *forum non conveniens*, as applied to the facts of these cases.[31]

---

[28]    *Id.*

[29]    *Id.* at 1078.

[30]    Defendants Sioux Trucking and Brandon Stowers are also represented by counsel for FedEx, who has filed a joint brief on all their behalf.

[31]    We consolidated the appeals and granted review of a single issue, which we rephrased to encompass each of the defendant's individual arguments, namely:  "In reversing the trial court's order, which transferred the underlying actions to the county in which the incident giving rise to the claims occurred, did the Superior Court misapply the doctrine of *forum non conveniens*?"  *Tranter v. Z&D Tour, Inc.*, 367-81 EAL 2023, 315 A.3d 1225 (Pa. 2024) (*per curiam*).

## II. Arguments

The parties' arguments are straightforward. Defendants FedEx, Penske, and UPS agree that analysis of *forum non conveniens* principles under Rule 1006(d)(1) demands reference to this Court's decisions in *Cheeseman v. Lethal Exterminator, Inc.*,[32] and *Bratic v. Rubendall*.[33] Each defendant contends that the Superior Court erred by instead prioritizing its own, older decision in *Petty*, which, defendants argue, was legally flawed from the beginning, and, in any event, is inconsistent with the principles that this Court later articulated in *Cheeseman* and *Bratic*. The defendants maintain that the Superior Court's "key witness" requirement imposes an excessive and unreasonable burden upon the petitioning party. Defendants point out that the *forum non conveniens* determination is made very early in a lawsuit, as the petitioner necessarily wishes to avoid engaging in extensive litigation in the very venue that it alleges is oppressive or vexatious. Requiring defendants to identify and disclose the identity of witnesses who will be "key" to their legal strategy at so early a stage in the litigation, the defendants argue, imposes an unrealistic and excessively stringent burden upon them. Defendants also stress the deference owed to trial court discretion, and they argue that the evidence presented to the trial court in these matters amply satisfied their burden to obtain transfer to Westmoreland County—a decision that reveals no abuse of the trial court's discretion.[34]

---

[32]     *Cheeseman v. Lethal Exterminator, Inc.*, 701 A.2d 156 (Pa. 1997).

[33]     *Bratic v. Rubendall*, 99 A.3d 1 (Pa. 2014).

[34]     The defendants' position is supported by *amici curiae* the Chamber of Commerce of the United States of America, the Pennsylvania Coalition for Civil Justice Reform, the Pennsylvania Chamber of Business and Industry, the Pennsylvania Medical Society, the Pennsylvania Chapter of the American College of Physicians, the Pennsylvania Chapter of the American Academy of Pediatrics, the University of Pittsburgh Medical Center, the Trucking Industry Defense Association, the American Trucking Associations, the Pennsylvania Motor Truck Association, the American Property Casualty Insurance (continued…)

By contrast, the plaintiffs emphasize the importance of their right to choose the court in which they wish to proceed. The primary thrust of plaintiffs' argument is that travel burdens are less salient in our era, as technological advancements allow for witnesses to testify remotely and documents to be transmitted electronically. Plaintiffs question the foundations of *forum non conveniens*, emphasizing that "modern technology has rendered many of the original concerns obsolete, making the application of the . . . doctrine in today's context questionable."[35] Plaintiffs provide a detailed historical discussion of the development of *forum non conveniens*, seeking to illustrate that the challenges which necessitated invocation of the principle in the past are no longer extant, given the advent of technology allowing for virtual testimony and e-mail transmission of documents.

Regarding application of *forum non conveniens* to these facts, plaintiffs assert that the trial court failed to recognize deficiencies in the defendants' petitions and supporting affidavits. While the trial court emphasized that defendants identified sixty-six potential witnesses who would be required to travel over two hundred miles, plaintiffs insist that the number of witnesses is immaterial. Plaintiffs opine that it is unlikely that all sixty-six witnesses ultimately would be called to testify. Plaintiffs further contend that the witness affidavits were deficient in various respects. For example, plaintiffs criticize certain affidavits for speculating as to how many hours would be required to travel to Philadelphia, and they object to numerous affidavits that assert similar claims of hardship. Plaintiffs assert as well that the affidavits do not adequately detail the witnesses' personal

---

Association, the Pennsylvania Association of Mutual Insurance Companies, Curi, and the Philadelphia Association of Defense Counsel.

[35] Plaintiffs' Br. at 17-18.

knowledge of the facts and do not provide sufficient indication of what, precisely, their trial testimony will entail. Given these purported deficiencies, plaintiffs assert, the trial court abused its discretion in granting the petitions to transfer.[36]

FedEx, Penske, and UPS offer separate arguments in reply to the plaintiffs' position, but their arguments again overlap. Most relevantly, defendants all point out that plaintiffs' catch-all response to concerns with oppressive venues—remote testimony— would effectively eliminate the doctrine of *forum non conveniens* and render a plaintiff's choice of venue unchallengeable. The defendants argue that remote testimony is inferior to live, in-person testimony, and they point to scholarship indicating that remote testimony, along with the poor audio or video quality and connectivity problems that it sometimes entails, can negatively impact perceptions of witness testimony and credibility.[37] Defendants assert that they are entitled to present their defenses in the manner that they see fit, and that they should not be forced to accept an inferior method of evidence presentation merely to accommodate plaintiffs' selection of an oppressive venue.

## III. Analysis

We begin with a review of the doctrine of *forum non conveniens*, which we explored in *Cheeseman* and *Bratic*. Review of those precedents reveals that the instant cases are controlled by the principles that we articulated there. The Superior Court's innovation and

---

[36] The plaintiffs' position is supported by *amici curiae* the Pennsylvania Association for Justice, the Center for Auto Safety, and the Attorneys Information Exchange Group.

[37] *See, e.g.*, FedEx's Reply Brief at 7-8 & 7 n.2 (citing, *inter alia*, Michael D. Roth, *Laissez-Faire Videoconferencing: Remote Witness Testimony and Adversarial Truth*, 48 UCLA L. REV. 185, 204, 204 n.107 (2000); Elena Bild, *et al.*, *Sound and Credibility in the Virtual Court: Low Audio Quality Leads to Less Favorable Evaluations of Witnesses and Lower Weighting of Evidence*, 45 LAW & HUM. BEHAV. 481, 487 (2021)).

imposition of a "key witness" requirement is inconsistent with governing law. No further improvements upon the doctrine of *forum non conveniens* are necessary or warranted.

Trial court decisions involving *forum non conveniens* are reviewed for abuse of discretion.[38] We have stated that "the trial court's ruling must be reasonable in light of the peculiar facts. If there exists any proper basis for the trial court's decision to transfer venue, the decision must stand."[39]

Within the confines of our Rules of Civil Procedure,[40] plaintiffs enjoy the right to make the "the initial choice of the court in which to bring an action, if that court has jurisdiction."[41] This Court has "emphatically stated that the plaintiff's choice of forum is entitled to weighty consideration," and a trial court "must give deference to the plaintiff's choice of forum in ruling on a petition to transfer venue."[42] Nonetheless, the plaintiff's selection is not unassailable. "Although a plaintiff, as a rule, may choose the forum in which to bring suit, that right is not absolute."[43] The doctrine of *forum non conveniens* provides "a necessary counterbalance to [e]nsure fairness and practicality."[44] Any party to the litigation (but most often a defendant) may petition the trial court for transfer of

---

[38] *Cheeseman*, 701 A.2d at 159; *Bratic*, 99 A.3d at 7.

[39] *Bratic*, 99 A.3d at 7 (quoting *Zappala v. Brandolini Prop. Mgmt., Inc.*, 909 A.2d 1272, 1284 (Pa. 2006)).

[40] Venue selection is governed by Pa.R.Civ.P. 1006(a) (individual defendant), 2103 (political subdivisions), 2130 (partnerships), 2156 (unincorporated associations), and 2179 (corporations and similar entities).

[41] *Bratic*, 99 A.3d at 6 (citing *Plum v. Tampax, Inc.*, 160 A.2d 549, 552-53 (Pa. 1960)).

[42] *Id.* at 6-7 (quoting *Okkerse v. Howe*, 556 A.2d 827, 832 (Pa. 1989) (cleaned up)); *Cheeseman*, 701 A.2d at 162.

[43] *Zappala*, 909 A.2d at 1281 (typographical error corrected).

[44] *Bratic*, 99 A.3d at 6 (quoting *Okkerse*, 556 A.2d at 832).

venue pursuant to Rule 1006(d)(1) of the Pennsylvania Rules of Civil Procedure, which provides as follows:

> For the convenience of parties and witnesses, the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.[45]

Although Rule 1006(d)(1) speaks of the "convenience of parties and witnesses," the doctrine of *forum non conveniens* that is embodied in the Rule concerns more than "convenience" in the common sense of the word. In order to overcome the deference due to the plaintiff's choice of venue, "the defendant must show more than that the chosen forum is merely inconvenient to him."[46] Rather, the defendant must demonstrate that the forum is "oppressive" or "vexatious." A "vexatious" forum can be one that is "designed to harass the defendant, even at some inconvenience to the plaintiff himself."[47] "Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute."[48]

The question in a *forum non conveniens* analysis is not whether the plaintiff's initial venue choice is permissible; indeed, the doctrine assumes that it is. "The doctrine of *forum non conveniens* is that a court may resist imposition upon its jurisdiction, even when jurisdiction is authorized by the letter of a general venue statute . . . ."[49] A "Rule

---

[45]     Pa.R.Civ.P. 1006(d)(1).

[46]     *Cheeseman*, 701 A.2d at 162.

[47]     *Id.*

[48]     *Id.*

[49]     *Id.* at 160 n.3 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506 (1947)).

1006(d)(1) motion has little to do with whether the plaintiff's choice of forum is technically proper at the outset, because even if it is, the trial court is still vested with discretion to transfer the action to another county if the defendant meets his burden of proving that the forum is oppressive or vexatious."[50] The burden to justify a change of venue lies with the petitioner, "and it has been consistently held that this burden includes the demonstration on the record of the claimed hardships."[51]

This Court detailed the nature of the appropriate inquiry in *Cheeseman*, intending to clarify aspects of the Rule 1006(d)(1) analysis that had grown obscure over time. When we first addressed the necessary showing in *Okkerse*, this Court "borrowed a discussion of the considerations to be applied by federal courts in deciding whether to dismiss a federal diversity of citizenship action on the ground of *forum non conveniens*."[52] This standard suggested that a defendant could meet its burden by demonstrating either that the chosen forum is oppressive or vexatious, or alternatively by invoking "considerations affecting the court's own private and public interest factors," most notably docket congestion in the plaintiff's chosen court.[53] Following this Court's decision in *Okkerse*, the *Cheeseman* Court noted, "a policy developed of according court congestion great

---

[50] *Zappala*, 909 A.2d at 1283. As explained in *Zappala*, a challenge to the propriety of the plaintiff's initial choice of venue must be raised via preliminary objections pursuant to Pa.R.Civ.P. 1006(e) and 1028(a)(1). An assertion of *forum non conveniens* under Rule 1006(d)(1), by contrast, is made by separate petition. *See Zappala*, 909 A.2d at 1281-85; Pa.R.Civ.P. 1028(a)(1).

[51] *Bratic*, 99 A.3d at 7 (quoting *Okkerse*, 556 A.2d at 832).

[52] *Cheeseman*, 701 A.2d at 159-60 (discussing *Okkerse*) (emphasis omitted).

[53] *Okkerse*, 556 A.2d at 832 (quoting *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 159 (3d Cir. 1980), *rev'd*, 454 U.S. 235 (1981)).

weight at the expense of the plaintiff losing his chosen forum."[54]  Although this Court's decision in *Scola v. AC&S, Inc.*, was "intended to rectify this policy," *Scola* repeated the "private and public interest" language from *Okkerse*, which led to "obvious confusion . . . in the lower courts regarding the inquiry which a trial court must conduct in ruling on a petition to transfer venue pursuant to Rule 1006(d)(1)."[55]

*Cheeseman* made clear that court congestion is not a sufficient basis for granting a transfer of venue under Rule 1006(d)(1).  This Court explained that the "post-*Scola* confusion stems from the *Okkerse* language originating in federal diversity of citizenship cases," and recognized that the interests implicated in diversity jurisdiction "are *not* necessarily identical to the concerns a trial court must assess in ruling on a Rule 1006(d)(1) petition asserting *forum non conveniens*."[56]  Whereas federal diversity jurisdiction implicates choice-of-law issues, transfer petitions under Rule 1006(d)(1) pose "the question of whether a transfer of venue of an action, appropriately filed with that forum, to another appropriate court in a county of this Commonwealth is necessary for the convenience of parties and witnesses."[57]  "The convenience to the court is not mentioned in Rule 1006(d)(1) and is not an appropriate consideration for a Rule 1006(d)(1) inquiry."[58]  The *Cheeseman* Court commented that most Pennsylvania courts are busy, and it is thus "the usual circumstance, rather than the unusual circumstance,

---

[54]  *Cheeseman*, 701 A.2d at 160.

[55]  *Id.* at 160-61 (discussing *Scola v. AC&S, Inc.*, 657 A.2d 1234, 1241-42 (Pa. 1995)).

[56]  *Id.* at 161 (emphasis in original).

[57]  *Id.*

[58]  *Id.*

that the chosen forum will be concerned about its own congestion."[59]  Reliance upon court congestion would lead to venue transfers as a matter of course, which would contradict the principle that the plaintiff's choice of venue is entitled to deference and "should rarely be disturbed by the grant of a Rule 1006(d)(1) petition."[60]

Under *Cheeseman*, a showing of oppressiveness or vexatiousness is essential to the *forum non conveniens* inquiry under Rule 1006(d)(1) in all cases.  *Cheeseman* explained that, "to the extent that this court indicated in *Scola*, on the basis of the *Okkerse* test, that court congestion is an appropriate factor to be considered by a trial court ruling on a petition to transfer venue, this statement was misleading and should be treated as mere *dicta*."[61]  Rather, "a petition to transfer venue should not be granted unless the defendant meets its burden of demonstrating, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant."[62]

Our most recent discussion of *forum non conveniens* principles under Rule 1006(d)(1) is the one most directly applicable to the instant appeals.  Our 2014 decision in *Bratic* provided important guidance on the nature of an "oppressive" venue and the evidentiary showing that a petitioner must provide in order to demonstrate such oppressiveness.  Because *Bratic* is effectively dispositive of the instant cases, we must discuss its rationale in detail.

Although it also concerned an effort to litigate in Philadelphia, the dispute in *Bratic* grew out of a lawsuit in Dauphin County.  After the defendants in the Dauphin County suit

---

[59]    *Id.*

[60]    *Id.* at 162.

[61]    *Id.*

[62]    *Id.*

prevailed on summary judgment, they filed a new action in Philadelphia County asserting wrongful use of civil proceedings and common law abuse-of-process claims against the plaintiffs in the Dauphin County action. The original plaintiffs—now defendants in the Philadelphia County action—filed a petition under Rule 1006(d)(1) to transfer the case to Dauphin County based upon *forum non conveniens*. They alleged that the relevant witnesses and evidence were located in Dauphin County, and they presented the affidavits of seven potential witnesses, all of whom resided over one hundred miles from Philadelphia. The affiants asserted that traveling to Philadelphia to participate in the litigation would be personally and professionally disruptive, as they would incur substantial costs and would each be forced to take off at least one full day from work for travel. The trial court in Philadelphia granted the transfer petition, but an *en banc* panel of the Superior Court ultimately reversed, concluding that the defendants failed to carry their burden to demonstrate that trial in Philadelphia would be oppressive or vexatious.

This Court reversed. We held that the defendants' evidentiary showing was satisfactory and that the trial court did not abuse its discretion in transferring the action to Dauphin County. *Bratic* stressed the "considerable discretion" of the trial court in ruling on a transfer petition, and noted that the trial court there had not premised its decision upon its own docket congestion, which premise would have violated *Cheeseman*.[63] The *Bratic* Court noted that "*Cheeseman* was not intended to increase the level of oppressiveness or vexatiousness a defendant must show; rather, understood in its articulated context, *Cheeseman* merely corrected the practice that developed in the lower

---

[63]   *Bratic*, 99 A.3d at 8.

courts of giving excessive weight to 'public interest' factors when ruling on a *forum non conveniens* motion."[64]

The *Bratic* plaintiffs had argued that the trial court gave excessive weight to the fact that none of them resided in Philadelphia, but this Court found no such error. Although the residence of the plaintiffs is "peripheral to the issue and insufficient to warrant transfer," the *Bratic* Court noted that the trial court had merely mentioned the matter alongside other relevant considerations.[65] "As with other factors not sufficient for transfer themselves, if residence is probative of oppressiveness, it is not error to reflect upon it, so long as it is not the sole reason for the judge's decision."[66] The residence of the plaintiffs, indeed, can be a valid consideration, as *Cheeseman* had "pointed out that 'access to witnesses or other sources of proof' was an entirely legitimate factor when determining oppressiveness, and the plaintiffs are certainly 'sources of proof.'"[67]

The Superior Court had faulted the affidavits of the potential witnesses in *Bratic* for containing similar language and for failing to provide exacting detail on the nature of the disruption to their businesses and professional lives. This Court responded:

---

[64]     *Id.* at 7-8. As it concerns "public interest" factors like court congestion, *Bratic* also took the opportunity to clarify that *Cheeseman* did not forbid all consideration of such. "Whatever public interest factors exist, they are not determinative; they are only a factor insofar as they bear directly on the ultimate test." *Id.* at 8; *see also id.* (["I]f efficient resolution is precluded by uniquely disruptive court volume, it cannot be impermissible for the court to so note, but only insofar as it bears on the ultimate consideration of venue as oppressive or vexatious. That is, if the congestion contributes to the oppressiveness of the chosen venue, it may be considered, though we reiterate it is not a factor sufficient by itself to warrant transfer, as was the holding of cases before *Cheeseman.*").

[65]     *Id.*

[66]     *Id.*

[67]     *Id.* (quoting *Cheeseman*, 701 A.2d at 162) (internal citation omitted).

We are unsure what extra detail must be enumerated—the interference with one's business and personal life caused by the participatory demands of a distant lawsuit is patent. The witnesses need not detail what clients or tasks will be postponed or opportunities lost in order for the judge to exercise common sense in evaluating their worth; indeed, no one can foretell such detail. One hopes a judge may comprehend the existence of relevant general disruption from the allegations in the affidavit, sufficiently to rule on the issue.[68]

As for the similarity in the language of the affidavits, this Court commented:

The affidavits here, of course, employed nearly identical language, as the factual basis for each is nearly identical—the oppressiveness of trial 100 miles away, which is manifestly troublesome. The trial judge need not be told like a child how the distance in and of itself makes things more disagreeable and disruptive to the persons obliged to travel. Nor is it a secret requiring iteration that trial in Dauphin County would provide easier access to local appellants and their local witnesses, as well as the relevant court documents on which the very case is based.[69]

As this latter passage demonstrates, the distance that witnesses would have been forced to travel—over one hundred miles—figured prominently in *Bratic*'s analysis. "As with other factors insufficient on their own, distance alone is not dispositive, but it is inherently part of the equation."[70] The *Bratic* Court pointed out that, whereas *Cheeseman* concerned a petition to transfer a case from Philadelphia to neighboring Bucks County, the distance involved in *Bratic* was more burdensome:

Dauphin County, however, is not a neighbor of Philadelphia, and one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles. It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional. The Superior Court speculated upon the eight witnesses, be they employees or professionals, and the economic consequences as to each is not of record, but it may be presumed without fear of contradiction

---

[68]    *Id.* at 9.

[69]    *Id.* at 10.

[70]    *Id.* at 9.

that to each of these people, time indeed is money, and days of participating in trial in Philadelphia would impact their duties/operations.

\*   \*   \*

As between Philadelphia and adjoining Bucks County, the situation in *Cheeseman*, we speak of mere inconvenience; as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway.[71]

In response to plaintiffs' arguments concerning alleged inadequacies in the witness affidavits, *Bratic* pointed out that affidavits are not even necessarily required. Favorably quoting from an *en banc* decision of our Superior Court, *Bratic* noted that a "petition to transfer venue must be supported by detailed information on the record, but '*Cheeseman* and Rule 1006(d) do not require any particular form of proof. All that is required is that the moving party present a sufficient factual basis for the petition, and the trial court retains the discretion to determine whether the particular form of proof is sufficient.'"[72] *Bratic* cited the Superior Court's *Wood* decision for its collection of precedents illustrating that "affidavits have never been held necessary to obtain transfer."[73]

The *Bratic* Court summarized its holding as follows:

We reaffirm the *Cheeseman* standard, but hold the showing of oppression needed for a judge to exercise discretion in favor of granting a *forum non conveniens* motion is not as severe as suggested by the Superior Court's post-*Cheeseman* cases. Mere inconvenience remains insufficient, but there is no burden to show near-draconian consequences.[74]

---

[71]   *Id.* at 9-10 (citation and internal quotation marks omitted).

[72]   *Id.* at 9 (quoting *Wood*, 829 A.2d at 714) (cleaned up).

[73]   *Id.* at 10 (citing *Wood*, 829 A.2d at 714 n.6).

[74]   *Id.*

*Bratic* provides important guidance for courts assessing a claim of *forum non conveniens* based upon witness hardship. A defendant petitioning for transfer of venue must place the grounds on the record, but no "particular form of proof" is required. There is no fixed litmus for the content of a witness affidavit.[75] Indeed, there is no "affidavit requirement" at all.[76] Rather, as with the ultimate decision as to whether to transfer venue, the sufficiency of the evidentiary basis is left to the sound discretion of the trial court, subject to review for abuse of that discretion.

*Bratic* also provides a useful guidepost for considering the effect of distance on the determination of venue oppressiveness. *Bratic* deemed it obvious that forcing witnesses to travel one hundred miles to participate in litigation was "manifestly troublesome," and that "one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles."[77] A distance of one hundred miles provides a valuable benchmark for distinguishing between oppressiveness and mere inconvenience. This guideline finds support in the observation that our Rules of Civil Procedure repeatedly use the same distance—one hundred miles—as the triggering point for various provisions relating to the conduct and use of depositions, which similarly concern the burdens of requiring witnesses to travel.[78] This is not to say that a venue is always oppressive where witnesses must travel further than one hundred miles, nor does it mean that a shorter distance can never contribute to a finding of oppressiveness. As *Bratic* explained,

---

[75]    *Id.* at 9 (quoting *Wood*, 829 A.2d at 714).

[76]    *Wood*, 829 A.2d at 714 n.6; *see Bratic*, 99 A.3d at 9-10.

[77]    *Bratic*, 99 A.3d 9-10.

[78]    *See* Pa.R.Civ.P. 4007.2(b)(2), 4008, 4020(a)(3)(b).

"distance alone is not dispositive, but it is inherently part of the equation."[79]  As a general rule, however, consistent with the discussion in *Bratic*, a distance of one hundred miles is a reasonable line, for "as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway."[80]

Returning to the instant cases, the Superior Court's departure from this Court's decision in *Bratic* is stark.  Where *Bratic* deemed Philadelphia to be a patently oppressive venue on the basis of seven affidavits from witnesses who would be required to travel one hundred miles, here the petitioning defendants produced affidavits from eleven witnesses (and identified dozens more) who would be forced to travel well over two hundred miles.   If "the oppressiveness of trial 100 miles away" was "manifestly troublesome" in *Bratic*, it is more than doubly so here.[81]  Tellingly, the Superior Court here cited *Bratic* only for general statements of legal standards applicable to *forum non conveniens* petitions, and it did not discuss the substance of *Bratic*'s rationale at all.[82]  Because *Bratic* is impossible to square with the Superior Court's decision in these appeals, the omission is glaring.

As for the core of the Superior Court's rationale, its imposition and treatment of a "key witness" requirement bears no resemblance to any aspect of this Court's analyses in *Bratic* or *Cheeseman*, or any of our other precedents.  This is not for lack of opportunity, for the Superior Court derived this standard from its decision in *Petty*, which predates

---

[79]     *Bratic*, 99 A.3d at 9.

[80]     *Id.* at 10.

[81]     *Id.*

[82]     *See Tranter*, 303 A.3d at 1075, 1075 n.7.

*Cheeseman* by one decade and *Bratic* by almost three.[83]  Nonetheless, setting aside our precedent for a moment, we agree with the defendants here that the Superior Court's "key witness" requirement, as articulated, cannot survive on its own merits.

There is no error in requiring a Rule 1006(d)(1) petitioner claiming witness hardship to provide the trial court with a "general statement" of what the witness' testimony may be expected to entail.[84]  In order to claim that witnesses would be burdened by travel, the petitioner necessarily must know the identity of the witnesses and have some idea of what information they may possess that makes them likely witnesses in the first place. Providing the court with a general statement of potential witnesses' identities and some sense of their anticipated testimony is essential to the entire exercise, for the "defendant bears the burden of establishing the need for a transfer by detailed information in his petition," and such "information should necessarily be adequate for the trial judge to rule upon the petition."[85]

The Superior Court's articulation of its "key witness" requirement, however, goes far beyond this basic requirement.  The Superior Court declared that defendants categorically fail to carry their burden if they do not establish that the testimony of the

---

[83]   The Superior Court's decision in *Petty*, moreover, derived the "key witness" language from the federal Third Circuit Court of Appeals' decision in *Reyno*.  *See Petty*, 525 A.2d at 1234 (quoting *Reyno*, 630 F.2d at 160-61).  *Reyno* not only was reversed by the Supreme Court of the United States years before the Superior Court decided *Petty*, but it also was the very same decision from which this Court in *Okkerse* sourced language that *Cheeseman* found to be problematic in the context of intrastate transfer under Rule 1006(d)(1).  *See supra* nn.52-53 and accompanying text; *Cheeseman*, 701 A.2d at 160-61; *Okkerse*, 556 A.2d at 832.

[84]   *Tranter*, 525 A.2d at 1075 (citing *Ehmer*, 296 A.3d at 1207; *Petty*, 525 A.2d at 1234).

[85]   *Cheeseman*, 701 A.2d at 162 n.8.

identified witnesses will be "necessary" or "critical" to their defenses.[86] The Superior Court's discussion further suggested that this requirement must be established within a witness affidavit itself, and that the *witness* must explain how his or her testimony would "benefit the defense."[87] There are numerous problems with these requirements. First, as the defendants all point out, *forum non conveniens* typically is raised quite early in the course of a lawsuit—often before any substantive discovery—precisely because the defendant wishes to avoid extensive litigation in the very venue alleged to be oppressive or vexatious.[88] Indeed, if a defendant waits too long to raise the matter, there is a risk that the court may cite the defendant's participation thus far as an indication that the plaintiff's chosen venue is not, in fact, oppressive or vexatious. Requiring the defense to identify and disclose the witnesses and testimony that will be "necessary" or "critical" to its position in effect demands that the defense present a fully developed trial strategy. At such an early stage of the litigation, this is an unreasonably high burden. Indeed, in many cases, because the lawsuit will not yet have proceeded to discovery, the defense may not yet even have a thorough understanding of the facts of the case. The defense may not

---

[86] *Tranter*, 303 A.3d at 1075-77.

[87] *Id.* at 1077 ("None of the affidavits contain information indicating how these potential witnesses' testimonies would be relevant or necessary to Appellees' respective defenses."); *id.* ("With respect to the two individuals cited by the trial court in support of its decision to transfer, Jason Beener and Joshua Zappone, we note that they did not indicate in their affidavits or during their depositions how their testimony would benefit the defense.").

[88] As noted above, *forum non conveniens* is properly asserted by separate petition rather than preliminary objection, and technically "there are no time limitations placed on a motion to transfer venue pursuant to Rule 1006(d)(1)." *Zappala*, 909 A.2d at 1283; *see supra* n.50. Nonetheless, the defendants' arguments that the matter is best addressed in the early stages of a lawsuit are well-taken.

be able to identify evidence that will be "necessary" or "critical" to its trial strategy for months, or even years in some cases.[89]

The same difficulties inhere in the Superior Court's suggestion that witness affidavits must include the witnesses' explanation of how their testimony will "benefit the defense." Again, the details of the defense's legal strategy may not be anywhere near developed at the point that the witness produces the affidavit. Even more significantly, fact witnesses such as those that the Superior Court identified are not parties to the litigation, nor are they counsel for any party, nor are they economically interested in the outcome of the litigation. It is wholly unclear why the Superior Court insists that disinterested, nonlawyer fact witnesses would be required to offer a legal opinion on how their testimony would "benefit the defense." It is doubly unwarranted to require that such witnesses detail this expected "benefit" within the four corners of an affidavit, when affidavits are not even essential to the satisfaction of the defendant's burden to obtain a transfer of venue.[90]

We reject the Superior Court's imposition of a "key witness" requirement upon a Rule 1006(d)(1) petitioner asserting *forum non conveniens* on the grounds of witness hardship. The petitioner necessarily must be able to identify the burdened witnesses and to provide the court with a general statement regarding the expected testimony, for such

---

[89] As FedEx persuasively argues, demanding that counsel for the defense disclose their opinions of which witnesses will be "necessary" or "critical" to their trial strategy also at least arguably contravenes the attorney work product doctrine, which protects "the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation." *BouSamra v. Excela Health*, 210 A.3d 967, 976 (Pa. 2019); *see also* Pa.R.Civ.P. 4003.3 ("[D]iscovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories."); FedEx's Br. at 29-31.

[90] *See Bratic*, 99 A.3d at 9-10.

is necessary to establish that the identified individuals are, indeed, potential witnesses. However, exacting detail on the precise content of future testimony is not and cannot be required, nor are petitioners obligated to disclose their ultimate legal strategy or to characterize anticipated testimony as "necessary," "critical," or a "benefit" to that legal strategy. The identification of ordinary fact witnesses who can provide testimony establishing the events at issue in the litigation can suffice to satisfy the petitioner's burden. Whether the existence or concentration of such witnesses establishes or contributes to a determination that a venue is oppressive is a matter we entrust to the discretion of the trial court. "Trial courts are vested with considerable discretion when ruling on such a motion, and '[i]f there exists any proper basis for the trial court's decision to transfer venue, the decision must stand.'"[91]

Here, the trial court's exercise of its discretion to transfer the instant cases to Westmoreland County was wholly proper. The trial court recognized the defendants' identification of a large number of "third-party witnesses (such as state troopers, medical and emergency responders, and eyewitnesses) who reside in or near Westmoreland County," and discussed the various details about the facts of the crash that such witnesses would be able to provide.[92] The trial court correctly noted that the "vast majority" of such witnesses would be required to travel well over two hundred miles to participate in litigation in Philadelphia, and that Pennsylvania courts have found venues to be oppressive where witnesses would be required to travel one hundred miles.[93] The trial court reviewed the affidavits of the potential witnesses, who explained that traveling

---

[91]     *Id.* at 8 (quoting *Zappala*, 909 A.2d at 1284).

[92]     Trial Ct. Op. at 2, 4.

[93]     *Id.* at 2-3.

such a distance "would represent a significant financial burden" and "present significant disruptions to their personal and professional lives."[94] With the grounds for transfer to Westmoreland County established on the record, the trial court's decision reflects no abuse of its discretion whatsoever.

The plaintiffs' arguments to the contrary are unavailing. Where the plaintiffs quibble over the content of certain affidavits, questioning, for instance, precise travel times to Philadelphia by road or by air, it remains that "one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of [two hundred] miles."[95] "It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional."[96] Both the plaintiffs and the Superior Court criticized a number of the witnesses' affidavits for containing "nearly identical" claims of hardship.[97] Yet, even a cursory consultation of *Bratic* reveals that "nearly identical" witness statements are not a barrier to relief. "The affidavits here, of course, employed nearly identical language, as the factual basis for each is nearly identical—the oppressiveness of trial [two hundred] miles away, which is manifestly troublesome."[98]

---

[94]     *Id.* at 2.

[95]     *Bratic*, 99 A.3d at 9.

[96]     *Id.*

[97]     *Tranter*, 303 A.3d at 1077 ("Each of the affidavits and statements describe in *nearly identical* terms the hardships that travelling [*sic*] to Philadelphia to testify would present to the individual, or to unnamed individuals in their employ." (emphasis added)); Plaintiffs' Br. at 55 ("All of these eight individuals signed *nearly identical* affidavits affirming generally to the facts that travel to Philadelphia for trial would pose a 'hardship,' and/or a 'significant financial burden' because the distance to the Philadelphia Court of Common Pleas was in excess of 200 miles and would require approximately four or more hours of travel." (emphasis added)).

[98]     *Bratic*, 99 A.3d at 10.

"The trial judge need not be told like a child how the distance in and of itself makes things more disagreeable and disruptive to the persons obliged to travel."[99]

The plaintiffs' central argument, however, is that no distance is necessarily burdensome because modern technology allows witnesses to testify remotely. We cannot agree. To be sure, virtual court appearance is a valuable tool when live, in-person proceedings cannot occur. Such technology allowed us to keep our courts open during the worst of the COVID-19 pandemic.[100] But it is not an adequate substitute in the ordinary course. Importantly, absent emergency circumstances such as those brought about by the pandemic, our Rules of Civil Procedure do not provide for the virtual appearance of witnesses at trial as a matter of course.[101] The plaintiffs cite no rule that would authorize the solution that they propose. The core of the plaintiffs' argument is premised upon purely hypothetical procedural rules, rather than actual practice in Pennsylvania courts.

Even if we hypothesize a state of affairs in which the plaintiffs' suggestion would be authorized by general rule, we still would reject virtual court appearance as a universal solution to the problems of witness hardship that are recognized within the doctrine of *forum non conveniens*. The defendants' reference to scholarship suggesting that remote testimony may negatively impact perceptions of witness credibility is certainly of interest,

---

[99]    *Id.*

[100]    *See In re Gen. Statewide Jud. Emergency*, 228 A.3d 1283, 1285 (Pa. Mar. 18, 2020) (*per curiam*) (authorizing and encouraging the "[u]se of advanced communication technology to conduct court proceedings" during the COVID-19 pandemic).

[101]    The Rules of Civil Procedure do provide for video depositions and electronic filing of documents. *See* Pa.R.Civ.P. 4017.1 (Video Depositions), 205.4 (Electronic Filing and Service of Legal Papers). These Rules do not, however, address the use of live, two-way video testimony at trial.

but one need not consult academic studies in order to appreciate the far more tangible downsides of virtual court proceedings. Nearly all who have practiced law in recent years are familiar with the drawbacks inherent in the technology. Live, in-person court proceedings do not suffer from frustrating connectivity problems, inadvertently muted microphones (or sounds captured on microphones that should be muted), or video feeds stuck on comical camera filters.[102] Virtual court appearance is, at best, a backup solution when the alternative is unavailable. It is preferable in every regard for the parties, the witnesses, the attorneys, the judge, and the jury to be in a room with one another.

The most significant problem with the plaintiffs' reliance upon remote testimony, however, is that it lacks any limiting principle. If every assertion of the oppressiveness of a venue is met with a suggestion of virtual litigation, then the doctrine of *forum non conveniens* would meet its end. Indeed, plaintiffs appear to acknowledge that this would be the case.[103] We decline the plaintiffs' invitation to depart so radically from well-established law. Within the confines of the rules governing venue, plaintiffs are entitled to select the court in which they wish to bring suit, and their choice is "entitled to weighty consideration."[104] Yet, as one of the only avenues available to challenge the plaintiffs' selection, it is essential that the doctrine of *forum non conveniens* remains viable, as "a necessary counterbalance to [e]nsure fairness and practicality."[105]

---

[102] *See, e.g.,* Christina Zdanowicz, *Lawyer tells judge 'I'm not a cat' after a Zoom filter mishap in virtual court hearing*, CNN (Feb. 10, 2021), https://edition.cnn.com/2021/02/09/us/cat-filter-lawyer-zoom-court-trnd (last visited September 19, 2025).

[103] *See* Plaintiffs' Br. at 17-18, 20-32.

[104] *Bratic*, 99 A.3d at 6-7 (quoting *Okkerse*, 556 A.2d at 832).

[105] *Id.* at 6 (quoting *Okkerse*, 556 A.2d at 832).

The instant litigation exemplifies this very problem. This is not a close case. Given the scale of the crash, the emergency response, and the ensuing investigations, the number of potential witnesses is undoubtedly quite large, and Westmoreland County is nearly as far from Philadelphia as any location in Pennsylvania. If this is not a circumstance appropriate to invoke *forum non conveniens*, then it is difficult to imagine a case that would be. Were we to dismiss the defendants' concerns for witness hardship by mere reference to remote testimony, we would effectively be eliminating the doctrine of *forum non conveniens* from Pennsylvania law. We decline to do so.

Because this is not a particularly close case, our analysis here may not provide a ready answer for all future cases in which questions of *forum non conveniens* arise. This is by design, and it is precisely why such decisions are entrusted to the discretion of our trial courts, who are in the best position to evaluate the circumstances of particular cases and to make reasoned judgments about the appropriateness of transferring venue. To borrow a passage from the Supreme Court of the United States in its *Gulf Oil* decision:

> Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.[106]

The trial court here did not abuse its discretion in transferring the instant cases to Westmoreland County.

The order of the Superior Court is reversed.

Chief Justice Todd and Justices Donohue, Dougherty, Brobson and McCaffery join the opinion.

---

[106] *Gulf Oil Corp.*, 330 U.S. at 508.

Justice Mundy files a concurring opinion in which Justice McCaffery joins.